**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:24-561** |
| | § | |
| **ANAS SAID** | § | |
| **DEFENDANT** | § | |

**GOVERNMENT RESPONSE**
**TO**
**MOTION TO COMPEL AND FOR COURT TO CONDUCT IN CAMERA**
**REVIEW, AND REQUEST FOR PRODUCTION DEADLINE AND EARLY**
**DISCLOSURE OF JENCKS ACT MATERIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through Acting United States Attorney John G.E. Marck and Assistant United States Attorneys Steven Schammel and Liesel Roscher and hereby file this response to Defendant's Motion to Compel and for Court to Conduct *In Camera* Review, and Request for Production Deadline and Early Disclosure of Jencks Act Material (the "Defense Motion").

**The Defense Motion's Demands for Discovery Are Premised on An**

**Entrapment Argument That Is Not Viable.**

As an initial matter, Defendant's argument that he should be provided sweeping disclosure of otherwise non-discoverable material about the government's

investigation of his conduct to support an entrapment defense is premised on a legally erroneous view of what constitutes entrapment that is also contradicted by the facts in this case.

Defendant asserts that he intends to mount an entrapment defense.[1]  To support an entrapment defense, Defendant must first "make out a prima facie case that the government's conduct created a substantial risk" of entrapment.  *United States v. Bradfield,* 113 F.3d 515, 521 (5th Cir. 1997). Specifically, Defendant must make a *prima facie* showing of (1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense.  *Bradfield*, 113. F.3d at 521.  The measure of sufficiency for the *prima facie* showing is whether the evidence of inducement and lack of predisposition, considered together, is sufficient to permit a reasonable jury to find entrapment.  *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009); *Bradfield,* 113 F.3d at 521–22; *United States v. Nations,* 764 F.2d 1073, 1079–80 (5th Cir. 1985).  Inducement and predisposition are "related elements" and require showings of each element.  *Theagene*, 565 F.3d at 919; *see*

---

[1] The government recognized at the outset that, although an entrapment defense is without legal or factual support, Defendant might seek to argue for an entrapment defense. Thus, throughout the government's search for and review of materials to fulfill its discovery obligations, the government has looked for information that Defendant might use to support an entrapment defense, as well as any other potentially exculpatory evidence.

*also Mathews v. United States,* 485 U.S. 58, 63 (1988); *Nations,* 764 F.2d at 1079.

Once a defendant meets this burden he is entitled to an entrapment jury instruction, whereupon the burden shifts to the government to prove beyond a reasonable doubt that the defendant was "disposed to commit the offense before the government first approached him." *Bradfield,* 113 F.3d at 521–22; *see also Jacobson v. United States,* 503 U.S. 540, 548–49 (1992); *United States v. Rodriguez,* 43 F.3d 117, 126 (5th Cir. 1995). "It does not constitute entrapment for government agents to merely conduct undercover operations or otherwise employ 'artifice and stratagem' to catch criminals." *Theagene*, 565 F.3d at 922.

The Defense argues that Defendant's "actions evidence a lack of predisposition while the government's persistence indicates government inducement," Defense Motion at 20, but this argument is contrary to the evidence and inconsistent with what constitutes "lack of predisposition" and government "inducement" under the law. Here, there is ample evidence of Defendant's predisposition to support ISIS spanning back at least to 2017, and the information the government has produced regarding an FBI Online Covert Employee's ("OCE") communications with Defendant in 2023 regarding traveling to ISIS-held territory and obtaining a firearm to engage in an ISIS-inspired attack—conduct that is not the basis of the charge—does not constitute "inducement." As described in the

*Government's Memorandum in Support of Detention*, (Dkt. 8),[2] the government's investigation of Defendant's support for and attempts to connect with the Islamic State of Iraq and al-Sham ("ISIS") began in 2017, with an order he placed for two stickers: one containing an image of the Dome of the Rock[3] with an ISIS flag overlaying the image, and another showing the white silhouette of a man holding a rifle with the caption, "Winning the Islamic Nation." Defendant was interviewed by the FBI approximately four times in relation to these purchases between January and May of 2018. During a subsequent interview conducted on or about January 29, 2018, Defendant admitted both stickers were meant to show support for ISIS. Defendant stated that he did not support killings by ISIS, but he did express an affinity for Abu Muhammad al-Adnani, a former ISIS spokesperson.[4]

In a continuation of the investigation, on February 7, 2024, the FBI executed search warrants on Defendant's person, his residence, vehicle, and electronic devices. Subsequent analysis of Defendant's electronic devices revealed multiple

---

[2] Citations to "Dkt. #" refer to the numbered docket entry in this case.

[3] The Dome of the Rock is an Islamic shrine at the center of the Al-Aqsa Mosque compound on the Temple Mount in the Old City of Jerusalem.

[4] Al-Adnani was a Syrian militant leader who was the official spokesperson and a senior leader of ISIS. He was described as the chief of its external operations. He was the second most senior leader of ISIS after its leader Abu Bakr al-Baghdadi. He was killed in an airstrike on August 30, 2016.

encrypted messaging applications containing records of his efforts to create and disseminate propaganda that glorified ISIS's ongoing violence—the evidence underlying the material support offense charged in the indictment. Specifically, Defendant created multiple images and videos glorifying ISIS and ISIS attacks, often using material he copied from other official ISIS media organizations, at the direction of and in coordination with an individual who represented himself to Defendant as the "number 2" designer (the "Designer") for the "Dawlah" (referencing an alias of ISIS). Defendant also communicated online regarding his efforts to publish the pro-ISIS propaganda he created through an ISIS-affiliated media entity, Sarh al-Khilafah.

After his November 8, 2024, arrest, post-*Miranda*, Defendant explained, in great detail, the level and extent of his support for ISIS. In relation to the indicted conduct, Defendant readily admitted he created, edited, and used various programs and media outlets in order to create ISIS propaganda for the Designer and other ISIS groups. He stated he regularly created these videos and images in order to post them on encrypted chat platforms for a hundred or more ISIS followers. He identified his kunya[5] and the variations of his kunya that he used and placed in his propaganda as

---

[5] Kunya is an Arabic word that refers to a type of epithet or teknonym in an Arabic name. In this context, the Defendant used the kunya of Abu al-Uqab al-Samhari as a nickname in place of his real name.

a signature. Additionally, he established an encrypted chat group for other ISIS followers as another medium for distributing his and other ISIS propaganda and for translating ISIS content. Defendant further admitted that he tried several times to travel to join ISIS and he also discussed his efforts to commit violence in the United States, including considering purchasing a gun, researching military recruitment facilities, and scouting one specific location on Westheimer Road. Defendant also stated he considered asking military members that he would see near his work if they supported Israel or if they had been deployed to Afghanistan or Iraq and killed Muslims there, and if they said yes, those are the persons he would kill. Defendant also acknowledged he has anger and control issues and desires to kill and fight for ISIS against all those that support Israel.

The government has produced discovery related to an OCE's online communications with defendant from September through December of 2023.[6] In particular, this material documents how in a series of conversations on October 13, 2023, with the OCE, Defendant stated that he wanted to leave the United States and

---

[6] The Defense Motion also references FBI Confidential Human Source ("CHS") reporting the government produced indicating that a CHS identified a phone number for the defendant in June 2022, *see* Def. Mot. at 5, but this CHS had no substantive interaction with defendant.

that he had attempted to make hijrah[7] many times, but it did not work. Specifically, he wrote that he tried to make hijrah to Africa, but that the "brothers" advised him to wait as there were no safe passages. Defendant stated that "I asked my people how to go over there." When asked who "his people" were, the Defendant responded, "the group... ISIS." Additionally, he admitted he has pledged his allegiance to ISIS every time a new ISIS leader has been declared. As an alternative to travel, Defendant informed the OCE that he then contemplated conducting an attack within the United States. When the OCE asked if the Defendant had found a target, he stated that he had seen many military members in uniform locally and that he possessed a dagger which he stated he purchased because, "I am prohibited from purchasing a weapons license because of their suspicion of me." Beyond guns and knives, Defendant expressed an interest in explosives. On November 7, 2023, Defendant had another written conversation with the OCE in Arabic. As translated, the Defendant stated, "You know, I wish I knew how to make an explosive belt." The OCE asked where the Defendant would use such a belt, and he responded, "If I did, it would be very easy. I would shave my beard and hair, put on a military

---

[7] "Hijrah" is a term that has historically referred to religious migration, but ISIS supporters use the word "hijrah" to describe traveling to ISIS-controlled areas in order to join ISIS and wage violent jihad.

uniform for camouflage, and go inside and push the button. Everything will turn into grilled meat."

Although Defendant's communications with the OCE in 2023 are evidence of his knowledge regarding ISIS and his intent to provide support to ISIS, it is Defendant's communications with the Designer—who was not a government undercover agent—that are the basis of the charge in the Indictment. The OCE did not offer or suggest that defendant create or disseminate ISIS propaganda in coordination with the FTO in 2023, but even if the OCE had, that type of "offer … to engage in an unlawful transaction" does not constitute the inducement necessary to support an entrapment defense. *See* SDTX Criminal Pattern Jury Instruction 1.30 ("Entrapment"). Ultimately, the OCE's attempts to engage Defendant in communications in relation to the public safety threat he presented cannot constitute inducement with respect to his propaganda-making with the Designer and otherwise. Moreover, as reflected in the discovery provided to the Defense, Defendant was predisposed years before these 2023 interactions with the OCE, so Defendant also cannot make a *prima facie* showing of lack of predisposition. Thus, Defendant's sweeping discovery requests are not supported by the Defense's arguments about entrapment in the Defense Motion.

**The Government Has Complied with its Discovery Obligations and the**

**Procedural Framework of the Classified Information Procedures Act.**

Federal Rule of Criminal Procedure 16, provides an ongoing duty to the government to provide defendants with several categories of evidence. Presently, Defendant avers that there is additional information that would be material to the preparation of his defense of entrapment. A defendant may discover tangible objects in the possession of the government if, they are material to the preparation of the defense, if the government intends to use them in its case in chief, or if they were obtained from the defendant. Fed. R. Crim. P. 16(a)(1)(E). In addition to Rule 16 discovery, additional disclosures are required under *Brady v. Maryland*, 373 U.S. 83 (1963) (evidence favorable to the accused either at guilt or punishment), *Giglio v. United States*, 405 U.S. 150 (1972) (evidence bearing upon the credibility of a witness), and the Jencks Act, 18 U.S.C. § 3500 (witness statements and reports. The government acknowledges that this duty is an ongoing duty that must be re-examined as new information is developed or obtained, which may also cast previously gathered evidence in a new light. And to that end, the government has made repeated rereviews of the materials in its holdings in light of discussions with Defendant's counsel to see if additional discovery is due.

But as the Defense acknowledges, with respect to the discovery of classified information, the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, provides the relevant procedural framework.[8] CIPA governs the discovery, admissibility, and use of classified information in federal criminal cases. The leading case in the Fifth Circuit addressing CIPA is *United States v. El-Mezain*, 664 F.3d 467, 519-525 (5th Cir. 2011). In *El-Mezain*, the Fifth Circuit adopted the "relevant and helpful" standard originally articulated in the seminal decision on CIPA rendered by the D.C. Circuit in *United States v. Yunis*, 867 F.2d 617, 623-24 (D.C. Cir. 1989). *See also United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). CIPA is procedural and neither creates nor limits a defendant's right to discovery; instead, it clarifies the district court's existing power to restrict or deny discovery. *El-Mezain*, 664 F.3d at 519-20. CIPA was not "intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory

---

[8] A more fulsome discussion of CIPA is had in the *Government's Notice Pursuant to 18 U.S.C. App. III & Memorandum of Law Regarding the Classified Information Procedures Act and Request for an Order Designating Classified Information Security Officer* (Dkt. 10). For conciseness, the government recites only the overarching principles of the CIPA process. For a detailed discussion, the government would refer the Court to that filing, (Dkt. 10), as well as in the government's classified, *ex parte*, *in camera* filings in support of its motion under CIPA Section 4 and Rule 16 (Dkt. 27, Dkt. 29, and Dkt. 42).

nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990).

Regarding information that is withheld, including in the form of redactions, both Section 4 of CIPA and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the government to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Section 4 of CIPA provides, *inter alia*:

> The court may permit the United States to make a request for [relief from discovery] in the form of a written statement to be inspected *by the court alone*. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. III § 4 (emphasis added). Section 4 requires no particular showing before the Court may grant a request to proceed *ex parte* and *in camera*. *See United States v. Sarkissian*, 841 F.2d 959, 965-66 (9th Cir. 1998); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984), *vacated and remanded on other grounds sub nom. by United States v. McAfee*, 479 U.S. 805 (1986). Similarly, Rule 16(d)(1) contains a substantially identical provision: "The court may permit a party to show good cause [for relief from discovery] by a written statement that the court will inspect ex

11

parte. If relief is granted, the court must preserve the entire text of the party's statement under seal." Fed. R. Crim. P. 16(d)(1); *see also United States v. Innamorati*, 996 F.2d 456, 487 (1st Cir. 1993) ("[Rule] 16(d)(1) expressly authorizes the court to deny discovery of information sought by a defendant based on an *ex parte* showing by the government of the need for confidentiality.").

In determining whether to authorize the government to withhold classified materials from discovery under Section 4 of CIPA, federal courts, including the Fifth Circuit, have applied the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53 (1957). *El-Mezain*, 664 F.3d 467 at 520-21. In *Roviaro*, the United States Supreme Court considered the application of the of the informant's privilege—pursuant to which the government may withhold from disclosure the identity of its informants—to the general discovery rules. *Roviaro*, 353 U.S. at 55. The Court held that the defendant's interest in mounting a defense was triggered only when the information in the government's possession was "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. . ." *Id*. at 60-61. Second, when the evidence is deemed relevant and helpful, courts must "balance[ ] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62. It is under this standard that the Government has reviewed the evidence in this case and then subsequently filed its original motion

12

pursuant to CIPA Section 4 and Rule 16, which has been approved by the Court. *See Protective Order of September 4, 2025* (Dkt. 28).

As the government has indicated to the Defense, and as explained in further detail in the government's classified, *ex parte*, *in camera* filings pursuant to CIPA and Rule 16, the government produced declassified materials to defendant with certain redactions. Those redactions cover certain classified information, as well as unclassified but sensitive information related to FBI operations or administrative matters that is not discoverable. In his motion, Defendant has made a demand for certain broad categories of material—including material that is irrelevant and/or otherwise not discoverable under Rule 16, *Brady*, *Giglio*, or otherwise—and has speculated that the government has improperly redacted related information in the materials it has produced. While the government cannot fully and directly address each of the specific demands for information in the Defense Motion in this response or any unclassified setting given that to do so would risk revealing classified information, the types of information that the Defense has demanded would be classified (to the extent discoverable). The government respectfully requests that the Court review the Defense's Motion in light of the information the government provided in its classified, *ex parte*, *in camera* CIPA filings, and the government can address any related questions the Court may have in the appropriate classified, *ex parte* setting. With respect to Defense Exhibits 1 through 7 of the Defense Motion,

13

the government can also provide classified "redbox" versions of those documents for the Court's *ex parte*, *in camera* review so that the Court can inspect the redacted material.

## Early Production of Jencks

Although it is not required to do so, the government has agreed to produce Jencks materials prior to the testimony of government witnesses, but the government does not plan to produce them at any time prior to the final pretrial conference.

Respectfully submitted,

JOHN G.E. MARCK
ACTING UNITED STATES ATTORNEY

By:  */s/ Steven Schammel*
STEVEN SCHAMMEL
Assistant United States Attorney
U.S. Attorney's Office
1000 Louisiana, Ste. 2300
Houston, Texas 77002
(713) 567-9325

LIESEL ROSCHER
Assistant United States Attorney
U.S. Attorney's Office
1000 Louisiana, Ste. 2300
Houston, Texas 77002
(713) 567-9000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on counsel for the defendant in accordance with the Federal Rules of Criminal Procedure on June 3, 2026.

*/s/ Steven Schammel*
Steven Schammel
Assistant United States Attorney