**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.: 4:24-cr-561** |
| | § | |
| **ANAS SAID** | § | |

### GOVERNMENT'S MOTION IN LIMINE

COMES NOW, the United States of America, by and through the United States Attorney for the Southern District of Texas, and files the following *Motion in Limine*.

The Defendant Anas Said ("SAID") is charged in a one count indictment with attempting to provide material support or resources to ISIS, a designated foreign terrorist organization, in the form of "personnel (himself)" and "services, including producing videos and propaganda" from between in or about January 2017 to in or about October 2024, in violation of 18 U.S.C. § 2339B. Dkt. 1.

The Government respectfully requests that the Court (1) take judicial notice that the Islamic State of Iraq and al-Sham ("ISIS") and other aliases for ISIS, as well as predecessor organizations are designated Foreign Terrorist Organizations ("FTO"); (2) admit evidence of Defendant's terrorist ideology and related propaganda including discussions regarding Defendant's intention and attempts to

join ISIS; (3) deny requests by Defendant to admit his own out-of-court statements; and (4) limit references to entrapment until Defendant has made his prima facie case.

## I.    The Court should take judicial notice of ISIS's FTO status.

The Federal Rules of Evidence allow courts to take judicial notice of adjudicative facts when those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1). Pursuant to federal statute, "The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number." 44 U.S.C. § 1507. Therefore, ISIS's status as an FTO should be judicially noticed since the designation is readily available and published in the Federal Register. The government requests that certain documents published in the Federal Register be judicially noticed. *Id*.

When referring to an FTO, "[t]he term foreign terrorist organization means an organization designated or redesignated as a foreign terrorist organization, or with respect to which the Secretary of State has notified Congress of the intention to designate as a foreign terrorist organization, under 8 U.S.C. 1189(a)." 31 C.F.R. § 597.309. The Court should also be permitted to take judicial notice that the "Secretary is authorized to designate an organization as a foreign terrorist organization in accordance with [section 1189]" that is, if the Secretary finds that:

> (A) the organization is a foreign organization' (b) the organization engages in terrorist activity (as defined in section 1182(a)(3)(B) of this

title or terrorism (as defined in section 2656f(d)(2) of Title 22), or retains the capability and intent to engage in terrorist activity or terrorism); and (c) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

8 U.S.C.A. § 1189 (West).

On October 15, 2004, the U.S. Secretary of State ("Secretary") designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as an FTO. *See* 69 Fed. Reg. 61292; *see also* 69 Fed. Reg. 75587. On May 15, 2014, the Secretary amended the designation of AQI as an FTO to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name, along with numerous other aliases. *See* 79 Fed. Reg. 27972. On both September 21, 2015, and March 22, 2019, the Secretary again amended the FTO designation to add additional aliases, including, for example, Islamic State, ISIS, Amaq News Agency, and Al Hayat Media Center. *See* 80 Fed. Reg. 58804; 84 Fed. Reg. 10881-10882. To date, ISIS remains a designated FTO. *See* U.S. Dep't of State, Foreign Terrorist Organizations, https://www.state.gov/foreign-terrorist-organizations (visited June 24, 2026).

Based on the foregoing, and pursuant to 44 U.S.C. § 1507 and Fed. R. Evid. 201, the government requests that the Court take judicial notice of the fact that the Islamic State of Iraq and al-Sham, including all its aliases, is designated as an FTO, as determined by the U.S. Secretary of State and published in the Federal Register

3

**II.    Evidence of Defendant's possession and use of propaganda and other material or evidence consistent with ISIS's terrorist ideology is relevant and helpful to the jury.**

At trial, the Government plans to introduce pro-ISIS chatter, material, and terrorist propaganda videos recovered from devices and accounts seized from Defendant. These materials are highly relevant as they tend to show that Said embraced a terrorist ideology, supported ISIS, and had the intent to work in coordination with ISIS. The evidence is intrinsic to the current charges, has significant probative value and the value outweighs any prejudicial effect. The information bears a direct relationship to the allegations at issue in the trial, contextualizes the conduct for the jury, and goes to the formation of Said's state of mind. Accordingly, the Government respectfully seeks a pretrial ruling that the materials are not barred by Federal Rule of Evidence 403 and therefore admissible.

Relevant evidence is "inherently prejudicial," but for it to be excluded there must be "*unfair* prejudice, *substantially* outweighing probative value". *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862(1979). Evidence used to rebut a defendant's claim of innocence is unlikely to be unduly prejudicial. *See United States v. Duncan,* 919 F.2d 981, 987–88 (5th Cir.1990). Because Rule 403 requires the exclusion of relevant evidence, it is an "extraordinary measure that should be used sparingly." *United States v. Pace,* 10 F.3d 1106, 1115 (5th Cir.1993), *cert. denied,* 511 U.S. 1149 (1994); *United States v. McRae,* 593 F.2d 700, 707 (5th

4

Cir.), *cert. denied,* 444 U.S. 862 (1979). In cases about material support to designated FTOs, it is "inescapable" that some of the evidence would contain violent or terrorist activity. *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011), as revised (Dec. 27, 2011).

It is essential for the jury to consider the propaganda materials on Said's devices to understand Said's motivation to work in coordination with ISIS. *See El-Mezain*, 664 F.3d at 509-10  (holding that the images and videos depicting Hamas leaders and glorifying Hamas were probative of the motive or intent of the defendants to support Hamas); *United States v. Mehanna*, 735 F.3d 32, 60 (1st Cir. 2013) (holding that the media absorbed by the defendant "doubtless bear on his motive and intent"); *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir.1998) (per curiam) (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.1988)) (holding terrorism propaganda possessed by the defendants provided "an explanation of the understanding or intent with which certain acts were performed"); *United States v. Hammoud*, 381 F.3d 316, 340 (4th Cir. 2004), *vacated on other grounds*, 543 U.S. 1097, (2005) (holding the playing of videotapes containing terrorism propaganda found in defendant's apartment was admissible as they were probative of the defendant's intent and his knowledge or agreement with the terrorist objectives of Hizballah).

Further, the probative value of terrorist propaganda is not outweighed by risk of unfair prejudice. Other courts confronting similar issues have decided "jihadist propaganda videos and documents found in a defendant's possession are admissible to show intent, despite the fact that such videos and documents risk prejudice." *United States v. Pugh*, 162 F. Supp. 3d 97, 115 (E.D.N.Y. 2016), aff'd, 937 F.3d 108 (2d Cir. 2019), opinion amended and superseded, 945 F.3d 9 (2d Cir. 2019) and aff'd, 945 F.3d 9 (2d Cir. 2019); *See, e.g.*, *El-Mezain,* 664 F.3d at 508 (ruling that evidence of Hamas violence found on defendants' computers "served the probative purpose of providing context and explanation in the case"); *United States v. Hammoud,* 381 F.3d 316, 342 (4th Cir. 2004) (holding that videotapes found in defendant's apartment depicting violence and anti-American sentiment were not unduly prejudicial under Rule 403 because they were probative of defendant's knowledge, "provided evidence of [his] motive in raising funds for Hizballah"); *United States v. Mehanna*, 735 F.3d 32, 60 (1st Cir. 2013) (ruling that terrorism propaganda in defendant's possession had probative value with respect to the defendant's motive and intent); *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir.1998) (per curiam) (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.1988) (upholding the admissibility of terrorist propaganda possessed by defendants because they performed the functions of evidencing motive and provided the jury with

background and an explanation as to the "intent with which certain acts were performed").

The Fifth Circuit precedent of *United States v. El-Mezain* is instructive. In *El-Mezain*, the defendants were charged with conspiracy to provide material support to the foreign terrorist organization of Hamas by serving as officers and directors for the Holy Land Foundation for Relief and Development (a funding arm for Hamas – "HLF"). *El-Mezain*, 664 F.3d 467at485. The Fifth Circuit upheld the admissibility of terrorist propaganda found on HLF computers as the evidence included images and videos depicting violence and glorifying Hamas leaders because it was probative to show the intent of the defendants to support Hamas. *Id.* at 509-10. The Court held that because the case involved terrorism, evidence of violence or terrorism was expected and while it may be unfavorable to the defendants of that case, it "could not conclude it was *unduly* prejudicial." *Id.* at 511.

Thus, the terrorist propaganda on Said's devices and accounts is admissible as it is plainly relevant to establishing Said's commission of the charged offenses, and any risk of unfair prejudice does not substantially outweigh the probative value of the evidence. Accordingly, the Government respectfully requests that the Court enter an order that such evidence is admissible at trial.

III. **Defendant should be precluded from admitting his own self-serving statements as hearsay.**

It is possible that, pursuant to Rule 106, the rule of completeness could apply to certain conversations introduced by the government; however, absent that narrow exception, the Defendant should be barred from introducing his own out-of-court statements as self-serving hearsay. Fed. R. Evid. 106.  Rule 106 does not "permit a party to introduce writings or recorded statements to affirmatively advance their own, alternative theory of the case." *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021); *United States v. Branch*, 91 F.3d 699, 729 (5th Cir. 1996). In accordance with Fed. R. Evid. 801(c), the Government respectfully requests that the Court enter an order that the defendant is barred from entering his hearsay statements into evidence to prove the truth of the matter asserted.

IV. **The Defendant cannot argue entrapment until he makes a prima facie showing.**

"Entrapment operated through a burden shifting regime." *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009). Prior to arguing entrapment, the Defendant must first make a prima facie showing both "(1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense." *Id*.  In other words, "the defendant must show evidence that provides, at the least, a basis for a reasonable doubt on the ultimate issue of whether criminal

8

intent originated with the government as opposed to the defendant." *Id.* (quoting *United States v. Bradfield*, 113 F.3d 515, 521 (5th Cir. 1997)).

After the defendant meets their initial showing, the "burden shifts to the government to prove beyond a reasonable doubt that the defendant was disposed to commit the offense before the government first approached him." *Theagene*, 565 F.3d at 918. The Fifth Circuit recently upheld a District Court's ruling on a similar request in an entrapment by estoppel case. That is, that the defendant could "invoke entrapment by estoppel only if the TGC actively misled him by an affirmative misrepresentation." *United States v. Ahmadou*, 159 F.4th 936, 942 (5th Cir. 2025) (citing *United States v. Trevino-Martinez*, 86 F.3d 65, 69 (5th Cir. 1996) (internal quotes omitted)). In addition, other circuits have granted similar requests to preclude defendants from asserting entrapment at trial as to not confuse the jury. *See United States v. Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995) ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law." (citing *United States v. Dunn*, 779 F.2d 157, 159 (2d Cir. 1985))); *United States v. Mayo*, 705 F.2d 62, 70 (2d Cir. 1983) (holding that "the entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces some evidence to contradict directly the prosecution's showing"); *United States v. Sistrunk*, 622 F.3d 1328, 1333 (11th Cir. 2010) ("The defendant's right to present the entrapment defense is conditional, since before an

entrapment defense may be presented to the jury, an evidentiary foundation for a valid entrapment defense must be present."); *see also, e.g., United States v. Aguinaga*, 643 F. App'x 858, 860-61 (11th Cir. 2016) (affirming district court's granting of Government's pretrial motion to preclude entrapment defense, because defendant "failed to produce sufficient evidence of government inducement," as "the government's mere suggestion of a crime or initiation of contact is not enough" to satisfy defendant's burden); *United States* v. *Blitch*, 773 F.3d 837, 843-46 (7th Cir. 2014) (affirming district court's granting of Government's pretrial motion to preclude entrapment defense, concluding that defendants had failed to proffer evidence showing that they were "subject to anything that would transform the government's solicitation into something more than an ordinary opportunity to commit a crime" (internal quotation marks omitted)); *United States* v. *Diaz-Maldonado*, 727 F.3d 130, 135-40 (1st Cir. 2013) (affirming district court's pretrial ruling precluding defense from raising entrapment defense in opening statement, finding that the defendant had failed to meet his "entry-level burden of production" with respect to inducement, and citing "the need to avoid having criminal trials turn into diversionary examinations of long-permitted operations of law enforcement").

In this case, the Defendant has failed to make any prima facie showing that "the evidence of inducement and lack of predisposition, considered together, is sufficient to permit a reasonable jury to find entrapment." *Theagene*, 565 F.3d at

918. Unless the Defendant makes such a showing, he should be barred from arguing entrapment.

## **CONCLUSION**

Given the statute, relevant case law, and the evidence in this case, the government requests that the Court grant the government's Motion in Limine.

JOHN G.E. MARCK
ACTING UNITED STATES ATTORNEY

By:*/s/ Steven Schammel*
    Steven Schammel
    Liesel Roscher
    Assistant United States Attorneys
    1000 Louisiana St., Suite 2300
    Houston, Texas 77002
    Telephone: 713-567-9000
    Facsimile: 713-718- 3300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel for the defendant in accordance with the Federal Rules of Criminal Procedure on June 26, 2026.

*/s/ Steven Schammel*
Steven Schammel
Assistant United States Attorney

11