# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**UNITED STATES OF AMERICA**
  **Plaintiff,**     §

              **CRIMINAL NO. 4:24-561**

**v.**           §

**ANAS SAID**
  **Defendant.**     §

## <u>DEFENDANT'S MOTION TO EXCLUDE  SITE AND MEIR AMIT CENTER REPORTS AND ANY TESTIMONY BASED ON SUCH REPORTS</u>

### FACTUAL BACKGROUND

On November 8, 2024, after an eight-year FBI sting operation, Anas Said was charged with attempted material support to ISIS, in the form of services (including videos and propaganda) and personnel (himself) under 18 U.S.C. §§ 2339B and 2 with knowingly attempting to provide material support and resources—to wit: personnel (himself) and services, including producing videos and propaganda—to the Islamic State of Iraq and al-Sham (ISIS).. The government alleges that Anas was involved in multiple Telegram groups in which he created and shared pro-ISIS graphic designs, including with an individual user named Abu Hamam. The government alleges, without any factual support and based on a

1

mischaracterization of Telegram messages in Arabic, that Abu Hmam was a designer affiliated with ISIS.

In its discovery produced to defense counsel, the government has included multiple reports generated by the Search for International Terrorist Entities ("SITE") and the Meir Amit Intelligence and Terrorism and Information Center ("Meir Amit Center"). These reports include but are not limited to:

- **Serial 548** documents a SITE Intelligence group query for Telegram usernames, one of which allegedly resulted in chat results that were pro-ISIS and categorized as an "AL-Dawlawi" media group.

- **Serial 6** includes a SITE Intelligence article titled, "Jihadists Share Cartoons Promoting IS Fighters, Mocking Attacks in West." The article includes Pinterest users who posted pro-ISIS images, some of which allegedly were posters by media groups such as Sarh al-Khilafah. *See* Exhibit 1.

- **Serial 376** documents a SITE article entitled, "Citing Zurich Attacker, IS-aligned Unit Urges Lone Wolves to Heed Call to Attack Jews and Christians," the article claims that on March 12, 2024, Sarh al-Khilafah published a pro-ISIS poster. *See* Exhibit 2.

- **Serial 395** features a SITE Intelligence article titled, "Returning to Stadiums as Targets, IS-aligned Unit Urges Supporters Attack Venues in London, Madrid, and Paris," which references a poster allegedly published by Sarh al-Khilafah on April 6, 2024 showing photos of the Emirates Stadium in London, UK; Metropolitano Arena and Santiago Bernabeu in Madrid, Spain; and Parc de Prince in Paris, France. *See* Exhibit 3.

- **Serial 394** features a SITE article from March 29, 2024 that is titled "IS-aligned Unit Incites Operation Outside Arena in Germany." The article includes a pro-ISIS poster allegedly published by the Sarh al-Khilafah Media Foundation on Marcy 20, 2024.  *See* Exhibit 4.

2

- **Serial 4** features a SITE article titled "Bloodthirsty and Boastful, IS-aligned Unites Justify Attack in Russia and Incite Lone Wolves." The article discusses ongoing propaganda issued by media groups including Sarh al-Khilafah specifically related to an operation in Russia. *See* Exhibit 5.

- **Serial 493** features a 32-page report published by the Meir Amit Center that includes a short section on the alleged merger of three pro-ISIS media groups into Sarh al-Khilafah. The report was found in an issue called the Spotlight on Global Jihad and was published between November 10 and 16, 2022. A majority of the report discusses various ISIS operations and activity around the globe, financing, and media propaganda methods. Only one page of the 32-page report focuses on the merger of the media groups. *See* Exhibit 6.

In the government's Motion for Detention filed on November 12, 2024, the government references the merger of Sarh al-Khilafah with three pro-ISIS media groups, apparently attempting to establish that Sarh al-Khilafah is formally affiliated with ISIS.

## ARGUMENT

### A. SITE and the Meir Amit Center have been critiqued by multiple legal observers for lack of credible research methods and academic independence.

All of the reports are produced by either the Search for International Terrorist Entities ("SITE") or the Meir Amit Intelligence and Terrorism and Information Center ("Meir Amit Center"). Neither organization constitutes a source of government-verified intelligence, nor does either purport to produce

3

peer-reviewed academic analysis. Both are private entities whose methodologies, institutional affiliations, and potential biases have been the subject of documented criticism — criticism that, as described below, directly bears on the reliability and weight of the specific conclusions the government seeks to introduce here. Crucially, even accepting their reports as accurate for purposes of this motion, the materials remain inadmissible under the Federal Rules of Evidence for the independent reasons set forth below.

SITE, or Search for International Terrorist Entities, is a for-profit US-based consultancy group that tracks online databases to monitor terrorist organizations. *See* SITE Intel. Grp. Enter. (last visited June 22, 2026), https://ent.siteintelgroup.com/; *Who are the SITE Intel. Grp.,* The Indep. (Sep. 04, 2014), https://www.independent.co.uk/news/world/who-are-the-site-intelligence-group-that-distributed-the-sotloff-video-before-the-jihadis-9710732.html. SITE is founded and led by Israeli analyst Rita Katz. Ms. Katz has built her career on being a self-described "terrorist hunter." She has been sued twice for her allegations related to terrorism financing. *See Even Near Home, a New Front is Opening in the Terror Battle,* New York Times (Sep. 23, 2004), https://www.nytimes.com/2004/09/23/world/worldspecial2/even-near-home-a-new-front-is-opening-in-the-terror.html. Both suits were dismissed because of procedural technicities, not the substantive claims. In the first instance it was

because the plaintiffs could not establish that the government agent relied on Ms. Katz's claims. In the second, it was because Ms. Katz's claims were so facially speculative that a reasonable jury could not conclude that they were anything but speculative.

The Meir Amit Center is an Israeli nongovernmental organization whose independence has similarly been brought into question by many stakeholders from human rights organizations to research universities. The center has close ties to the Israeli Defense Forces and is hosted at the Israeli Heritage and Commemoration Center. The head of the organization, Reuven Erlich, is a retired IDF lieutenant colonel and alleged military intelligence expert. *See Hezbollah Accused of Using Human Shields,* Wash. Post (Dec. 5, 2006), https://www.washingtonpost.com/wp-dyn/content/article/2006/12/05/AR2006120500446_pf.html. The organization has also received funding from Israel, putting into question its alleged "independence." Steven Erlanger, *Militant Zeal,* New York Times (June 25, 2006), https://web.archive.org/web/20231110023842/https://www.nytimes.com/2006/06/25/books/review/25erlanger.html?_r=1.

Multiple international legal observers and organizations have raised claims about the veracity and accuracy of the institute's prior research reports including the International Federation for Human Rights and UNRWA, the latter of which led the center to redact its claims. *See Israel/Occupied Palestinian Territory:*

*Ongoing Smear Campaign Against Al-Haq Staff*, Int'l Fed'n for Hum. Rts. (Oct. 11, 2017), https://www.fidh.org/en/issues/human-rights-defenders/israel-occupied-palestinian-territory-ongoing-smear-campaign-against; *UNRWA Rejects False Accusations About Its Summer Fun Weeks In Gaza*, United Nat'l Relief and Works Agency (June 20, 2013), https://www.unrwa.org/newsroom/press-releases/unrwa-rejects-false-accusations-about-its-summer-fun-weeks-gaza.

Independent investigations by academics have found that the center functions as a lobbying mechanism to mislead international bodies like the United Nations. For example, a report published by the University of Bath stated that the Meir Amir center published a report that lacked reliable evidence and primary citations despite making weighty claims about the Palestinian Return Center and its financial status. *See* Sarah Marusek, David Miller, *How Israel Attempts to Mislead the United Nations: Deconstructing Israel's Campaign Against The Palestinian Return Centre,* Univ. of Bath (2015), 8, https://purehost.bath.ac.uk/ws/portalfiles/portal/167838176/Marusek_and_Miller_How_Israel_attempts_to_mislead_the_United_Nations.pdf. The report also acknowledged that the Meir Amir Center's had strong ties to Israel and its military establishment, resulting in a lack of academic independence.

Any reports or testimony based on reports generated from organizations whose methodologies and institutional independence have been credibly

questioned should be excluded to ensure the accuracy of the evidence heard by the jury.

**B. The SITE and Meir Amir Reports should be excluded because they are irrelevant, prejudicial, and hearsay under the Federal Rules of Evidence.**

    **a. The reports are inadmissible hearsay and therefore must be excluded.**

Any out-of-court statement that a party offers to prove the truth of the matter asserted in the statement constitutes hearsay. Fed. R. Evid. 801. Here, were the government to offer any of the reports as evidence, they would be hearsay and thus inadmissible. The government has failed to demonstrate that any of the articles or posters were content that Anas himself created or shared, and it is unlikely that any of the hearsay exceptions would apply to a report generated by third-party organization that has little relevance to the facts at hand. Fed. R. Evid. 803. The reports discuss operations and activities not relevant to any of the conduct that Anas himself was involved with, to the extent the government can prove he was involved with such conduct. Thus, the reports are inadmissible under the hearsay rule.

    **b. Any testimony based on the SITE or Meir Amir reports is irrelevant to Said's material support conviction and has no probative value, resulting in the testimony being prejudicial.**

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury. . . ." Fed. R. Evid. 403. Here, any testimony based on the SITE and Meir Amir Center reports is irrelevant and therefore inadmissible.

As per the government's Memorandum in Support of Detention, Said is being "charged with attempting to provide material support and resources, namely personnel (himself) and services, to ISIS in relation to his production of pro-ISIS videos and propaganda at the direction of and in coordination with an individual [Abu Hamam] who represented himself to the Defendant as the 'number 2' designer for the 'Dawlah.'" ECF No. 8, at 7.

The reports produced by the government have no relevance to Said's charged conduct in interacting with Abu Hamam. The reports, which feature various inflammatory articles, posters, and images posted by pro-ISIS media groups and unidentified users on Pinterest, information about general ISIS attacks and media groups all over the world, and a list of Al-Dawlawi Telegram groups, have no relation to Said. The government does not allege, nor can it, that Said posted, created, or interacted with all of these images or that he was ever involved

8

with the organizations that generated these images. It does not allege, nor can it, that Said was involved with any of the operations or attacks mentioned in the SITE and Meir Amit articles. Furthermore, the government has seemingly introduced the Meir Amit Center article to support its allegation that Sarh al-Khilafah was affiliated with ISIS. But that information is irrelevant to the conduct that Said is charged with in interacting with Abu Hamam. Even if the nature of Sarh al-Khilafah's organizational status was at issue, the report is still irrelevant because it does not provide any evidence that establishes that Sarh al-Khalifah is a *formal* media organ of ISIS, which is the fundamental question in a Section 2339B charge. The Department of Homeland Security has identified the official media arms of ISIS, and none of the organizations mentioned in the report are listed. *Foreign Terrorist Orgs. Off. Media Arms,* Dep't of Homeland Sec., *https://www.dhs.gov/sites/default/files/publications/15-271-IA%20-%20Media%20Arms%20-%20Maniglia_update_v11_accessible.pdf.* The report would only prejudice Said by confusing the jury about Sarh al-Khilafah's affiliation with ISIS. Moreover, only one page of the 32-page report actually concerns the merger. The rest of the report contains prejudicial information about ISIS activity, strategies, and operations around the globe, information that would likely lead the jury to exponentially expand the limited conduct Said is charged with being involved in.

Without any clear relevance or probative value, the reports and any testimony based on such reports would be unfairly prejudicial to Said's case because they risk tainting the jury's perception of the Telegram groups and protected advocacy that Said was involved in. The jury will likely be impacted learning about such inflammatory information because such content often tends to further stereotypes and create feelings of fear and Islamophobia. These strong feelings about ISIS risk leading the jury to convict Said for actions that ISIS and other pro-ISIS media groups have committed, actions which Said has nothing to do with. *See United States v. Carpenter*, 157 F.4th 841, 849 (6th Cir. 2025) (citing United States v. Harvel, 115 F.4th 714, 737(6th Cir. 2024) ("Evidence *is* unduly prejudicial when it might lead the jury to convict for an inappropriate reason.") (internal quotation marks and citation omitted).

The government may argue that although the reports are prejudicial, testimony based on the reports is necessary to provide the jury with context. But "a prosecutor cannot justify the receipt of prejudicial, inadmissible evidence simply by calling it 'background' or 'context' evidence." *United States v. Benitez-Avila*, 570 F.3d 364, 369 (1st Cir. 2009) (internal citation omitted). In *United States v. Carpenter*, a case also involving a Section 2339B charge, the Sixth Circuit found that evidence that "framed Carpenter's knowledge of, and involvement with, ISIS" and connected Carpenter to the pro-ISIS organization involved in the case, had

10

probative value that outweighed any potential prejudice. *See United States v. Carpenter*, 157 F.4th 841, 849 (6th Cir. 2025). But the evidence here provides no such link between Said and the conduct in question. None of the SITE and Meir Amir Center reports are even related to Said or mention Said in any way. There is no thread that links Said with any of the information in the reports. For that reason alone, any testimony based on the reports is irrelevant, lacks probative value, and should be inadmissible.

The government's reports do not provide any background information to make sense of Said's actions, do not establish a nexus between Said and any other individuals in question, and do not provide any additional information that "completes the story of the charged offense." *See United States v. Gibbs*, 797 F.3d 416, 423-24 (6th Cir. 2015). For this reason, they lack any relevance and are entirely prejudicial.

**C. The government cannot authenticate the reports.**

Any testimony based on the reports requires the government to authenticate the reports themselves. The SITE reports are based upon articles and images posted by various pro-ISIS media outlets. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. "Data copied from an electronic device, storage medium, or file," must be

"authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902 (11)." Fed. R. Evid. 902(14). Pursuant to Rule 902(11)'s certification requirements, the government must "meet[] the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Furthermore "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). *See e.g. United States v. Dunnican*, 961 F.3d 859, 867 (6th Cir. 2020).

The government has not introduced any method in verifying the SITE and Meir Amir reports. Without being able to authenticate the images in the reports, any testimony based on such evidence is inadmissible.

> **D. Even with an Expert Witness, the Government Cannot Use the SITE and Meir Amit Reports as a Vehicle to Introduce Inflammatory Hearsay, and the Confrontation Clause Bars Admission of Those Reports' Analytical Conclusions Through a Surrogate Witness.**

The government has designated an expert witness. That changes nothing. Even through a qualified expert, the government cannot use the SITE and Meir

Amit Center reports as a vehicle to present to the jury inflammatory details about ISIS attacks, global violence, and organizational classifications that have no connection to Said and that the reports' authors, who are not available for cross-examination, generated outside this prosecution. The governing framework is Federal Rule of Evidence 703, and under that rule the reports must be kept from the jury for three independent reasons.

**i. First, the reports may not satisfy Rule 703's threshold requirement that the underlying data be the type terrorism experts reasonably rely upon to establish organizational affiliation as a fact in a criminal prosecution**. Rule 703 permits an expert to base an opinion on otherwise inadmissible evidence only if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Whether that threshold is met is a preliminary gatekeeping question for the Court under Rule 104(a). *See* Fed. R. Evid. 702 advisory committee's note. The question is not simply whether the expert chose to consult these reports, but whether counterterrorism experts would generally treat a for-profit subscription intelligence service's real-time online monitoring product, or a necessarily biased foreign government-funded NGO's newsletter, as a reliable basis for forming specific conclusions about a defendant's organizational affiliation that are then introduced against him at a criminal trial. There is a meaningful distinction between using such sources as

general investigative background and relying on them as the factual foundation for specific expert conclusions offered at trial. They are not a reasonable basis for the latter.

**ii. Second, even if the expert may rely on the reports, Rule 703's presumption against disclosure bars the government from presenting the reports' contents to the jury**. Rule 703 provides that if the underlying facts or data "would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury *only if* their probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect." Fed. R. Evid. 703 (emphasis added). This standard is the deliberate inverse of Rule 403's ordinary balancing test and creates a presumption *against* disclosing inadmissible basis evidence to the jury. The Advisory Committee Notes to the 2000 amendment explain that this heightened standard was added to guard against the use of expert testimony as a "back-door" to introduce inadmissible hearsay to the jury. Fed. R. Evid. 703 Advisory Committee's Note (2000 amend.). The government cannot clear that bar here. These reports describe global ISIS attacks, incitement to violence in multiple countries, beheading videos, and a 32-page catalog of ISIS operations entirely unconnected to Said. The jury does not need to hear any of that content to evaluate the expert's opinion on organizational classification. The

14

government's expert may testify to his conclusions; the underlying reports may not go to the jury.

**iii. Third, the Confrontation Clause independently bars the government's expert from conveying to the jury the analytical conclusions of the absent SITE and Meir Amit analysts.** In *Smith v. Arizona*, 602 U.S. (2024), the Supreme Court held that "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth",  and therefore implicate the Confrontation Clause. "Neither may the State introduce those statements through a surrogate analyst who did not participate in their creation," and "nothing changes if the surrogate . . . presents the out-of-court statements as the basis for his expert opinion." *Id.* at 21. That principle applies here. The core conclusions the government's expert would draw from these reports — that the Telegram group is ISIS-affiliated media, that Sarh al-Khilafah's November 2022 statement evidences a merger with ISIS, have meaning only if the SITE and Meir Amit analysts' characterizations are true. A government expert who adopts those characterizations from the reports without independent verification is a surrogate conveying another analyst's testimonial findings for their truth, which *Smith* prohibits. *See also Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)

(Confrontation Clause bars admission of testimonial statements of absent witnesses unless unavailable and defendant had prior opportunity to cross-examine).

While *Smith* left open whether the underlying reports are "testimonial," the defense submits that where a SITE report specifically classifies a Telegram group as ISIS media in the context of an active terrorism investigation, its primary purpose is to establish facts potentially relevant to prosecution, satisfying the testimonial standard. Regardless, Rules 703 and 403, standing alone, are sufficient to keep the reports' contents from the jury.

**E. The reports are further inadmissible because independent academic research and terrorism databases confirm that Sarh al-Khilafah is not an official ISIS organ, undermining the government's primary purpose in offering the Meir Amit report.**

The government's detention memorandum itself acknowledges that Sarh al-Khilafah is not an official ISIS media entity, describing its founding as a merger of three independent pro-ISIS propaganda groups. ECF No. 8 at 8 fn. 10. This characterization is independently confirmed by outside research and publicly available terrorism tracking databases, which uniformly classify Sarh al-Khilafah as "unofficial" ISIS-aligned media — distinguishing it explicitly from ISIS's formal organs. *See, e.g.*, Terrorism Research and Analysis Consortium (TRAC), Al-Azaim Foundation and Sarh al-Khilafah Media Circulate Propaganda Poster (Apr. 8, 2024) (classifying Sarh al-Khilafah as "Unofficial Islamic State/IS

16

Media"); *see also* Moustafa Ayad et al., Cloud Caliphate, ISD Global (May 2021) (describing Sarh al-Khilafah as a "digital support group" , not a formal ISIS organ). ISIS's own organizational documents identify its official media organs as Al-Furqan, Al-Hayat, Al-Bayan, Amaq, and Al-Naba. Sarh al-Khilafah appears on none of these lists. The State Department's formal FTO designation for ISIS, which has been amended to include official media aliases such as Al-Furqan and Al-Hayat, similarly contains no reference to Sarh al-Khilafah. The inescapable conclusion from the government's own filing and from independent academic and terrorism research is that Sarh al-Khilafah is an independent pro-ISIS support group, not a formal ISIS organ. If that is so, the 32-page Meir Amit report, offered apparently to establish Sarh al-Khilafah's ISIS affiliation, proves nothing material to the charged offense, and its highly prejudicial content about ISIS attacks globally has no place in this trial. Under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), and the Second Circuit's recent decision in *United States v. Ullah*, No. 21-1058 (2d Cir. Apr. 21, 2026), sending material to an independent support group does not constitute coordination with the FTO itself. Evidence offered to blur that line is not only legally irrelevant, it is the precise kind of prejudicial material Rule 403 was designed to exclude.

17

**F. The reports are cumulative and a limiting instruction would be an inadequate remedy.**

Rule 403 also permits exclusion of evidence that "needlessly presents cumulative evidence." Fed. R. Evid. 403. Even if any individual SITE article had marginal relevance, which the defense denies, introducing six separate SITE articles and a 32-page Meir Amit report, the vast majority of which concerns ISIS operations and attacks worldwide with no connection to Said, would be needlessly cumulative of any properly admitted evidence about ISIS's nature and designation as an FTO. The government can establish ISIS's FTO status through the State Department designation records. Piling on inflammatory intelligence reports about global attacks and beheading videos serves no purpose except to inflame the jury.

The government may argue that a limiting instruction would cure any prejudice. It would not. For certain categories of highly prejudicial evidence, the Supreme Court has recognized that juries cannot compartmentalize even with careful instructions. *See Bruton v. United States*, 391 U.S. 123, 135 (1968). Material depicting ISIS-claimed attacks in Russia, incitement to violence against sports fans in London and Paris, and other acts of global terrorism, none of which Said is charged with or connected to, cannot be un-seen by jurors once introduced, and no instruction can reliably prevent a jury from holding Said responsible for those acts. The only adequate remedy is exclusion.

## CONCLUSION

For the above reasons, defense counsel requests that this Court exclude any reports generated by SITE and the Meir Amit Center and any testimony based on such reports.

Respectfully submitted,

/s/ Sufia M. Khalid
/s/ Suha Najjar

Sufia M. Khalid
Suha Najjar
Attorneys for the Defendant Anas Said
National Security Criminal Defense
Center
Muslim Legal Fund of America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
972-914-2507

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel for the government in accordance with the Federal Rules of Criminal Procedure on June 26, 2026.

/s/    *Sufia M. Khalid*
Sufia M. Khalid

19