# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| | § | CRIMINAL NO. 4:24-CR-00561 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ANAS SAID, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR ATTORNEY-CONDUCTED VOIR DIRE, OR IN THE ALTERNATIVE FOR LIMITED ATTORNEY-CONDUCTED FOLLOW-UP VOIR DIRE, AND FOR INCLUSION OF DEFENDANT'S PROPOSED VOIR DIRE

Defendant Anas Said, by and through undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 24(a) and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, to permit counsel to conduct voir dire of the prospective jurors; or, in the alternative, to permit counsel to ask limited follow-up questions after the Court concludes its own examination of the venire. Defendant further requests that, whatever method the Court adopts, the Court include the inquiries set forth in Defendant's Proposed Voir Dire, filed concurrently herewith, and that questioning on the sensitive subjects

1

identified below be conducted individually and outside the hearing of the remaining prospective jurors. In support, Defendant states as follows.

**INTRODUCTION**

Mr. Said is a Muslim man of Arab descent charged with attempting to provide material support, in the form of personnel or services, to ISIS, a designated foreign terrorist organization. Few accusations carry a greater risk of activating latent bias. Terrorism prosecutions are among the most emotionally and politically charged cases tried in the federal courts, and this trial will proceed against a national backdrop of documented and widespread anti-Muslim and anti-Arab sentiment.[1]

The central task of jury selection in this case will be to identify prospective jurors who, whether or not they are willing or able to say so aloud in a crowded courtroom, cannot set aside preconceptions about Muslims, Arabs, Islam, or terrorism and instead decide this case solely on the evidence and the Court's instructions. That task cannot be accomplished by generalized questioning alone.

Counsel recognizes that this Court ordinarily conducts voir dire itself, and that Rule 24(a) commits the manner of voir dire to the Court's sound discretion.

---

[1]The empirical and social-science authorities documenting the pervasiveness of anti-Muslim and anti-Arab bias, and its intensification during periods of armed conflict involving Muslim-majority nations, are collected in Defendant's contemporaneous briefing and are incorporated here by reference. See, e.g., Neil Vidmar, *When All of Us Are Victims: Juror Prejudice and "Terrorist" Trials*, 78 Chi.-Kent L. Rev. 1143 (2003); Jaihyun Park et al., *Implicit Attitudes Toward Arab-Muslims and the Moderating Effect of Social Information*, 29 Basic & Applied Soc. Psychol. 35 (2007).

Defendant does not dispute that discretion; he respectfully asks the Court to exercise it, in the particular circumstances of this case, by allowing counsel to participate in the examination of the venire and by adopting the safeguards described below. At a minimum, Defendant asks that the Court pose the questions in the accompanying Proposed Voir Dire, permit limited attorney follow-up, and conduct the most sensitive inquiries individually.

## I. Rule 24(a) Commits the Manner of Voir Dire to the Court's Discretion and Expressly Authorizes Attorney Participation.

Federal Rule of Criminal Procedure 24(a) provides that "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so." Fed. R. Crim. P. 24(a)(1). If the court elects to conduct the examination itself, it "must permit the attorneys for the parties to: (A) ask further questions that the court considers proper; or (B) submit further questions that the court may ask if it considers them proper." Fed. R. Crim. P. 24(a)(2). The Rule thus leaves the method of voir dire to the trial court while guaranteeing the parties a meaningful opportunity to supplement the court's inquiry. See *Rosales-Lopez v. United States*, 451 U.S. 182, 188–89 (1981) (federal judges are "accorded ample discretion in determining how best to conduct the voir dire").

The purpose of voir dire is to secure an impartial jury and to permit the intelligent exercise of challenges for cause and peremptory strikes. Defendant's request that counsel be permitted to conduct or supplement the examination falls

squarely within the authority the Rule confers on this Court, and is directed at ensuring that the questioning is searching enough to surface the biases that matter in this particular case.

**II.  This Case Presents the "Special Circumstances" in Which Searching Inquiry into Religious, Ethnic, and National-Origin Bias Is Constitutionally Essential.**

The Supreme Court has long recognized that meaningful voir dire into racial, ethnic, and religious prejudice is required where such bias is "inextricably bound up with the conduct of the trial." *Rosales-Lopez*, 451 U.S. at 189–90 (quoting *Ristaino v. Ross*, 424 U.S. 589, 597 (1976)); see *Ham v. South Carolina*, 409 U.S. 524 (1973) (reversible error to refuse to question prospective jurors about prejudice where the defendant's identity was central to the case); *Aldridge v. United States*, 283 U.S. 308 (1931) (defendant entitled, as a matter of "the essential demands of fairness," to inquiry into possible bias). In the federal courts, moreover, the failure to honor a defendant's request to inquire into racial or ethnic prejudice is reversible error whenever "the circumstances of the case indicate a reasonable possibility that such prejudice might influence the jury." *Rosales-Lopez*, 451 U.S. at 190–91.

This is such a case. Mr. Said's religion and ethnicity are not incidental background facts; they are entwined with the very nature of the accusation. He is a Muslim, Arab man accused of seeking to support ISIS, a Muslim foreign terrorist organization, an accusation that, for some prospective jurors, may resonate with

precisely the stereotypes that decades of empirical research, and recent events, show to be widespread. As Justice Stevens observed, "there are many potential jurors who harbor strong prejudices against all members of certain racial, religious, or ethnic groups for no reason other than hostility to the group as a whole." *Rosales-Lopez*, 451 U.S. at 202 (Stevens, J., dissenting).

The risk here is neither hypothetical nor speculative. Terrorism-related prosecutions are, by their nature, freighted with fear and emotion, and courts have accordingly recognized that special care in jury selection, including anonymous juries and detailed jury questionnaires, is appropriate in terrorism cases. The additional layer of pervasive anti-Muslim and anti-Arab sentiment, which research shows tends to intensify during periods of armed conflict involving Muslim-majority nations, heightens the danger that a juror's preexisting hostility could influence the verdict.[2]

Because these circumstances present a "reasonable possibility" that religious, ethnic, or national-origin prejudice could affect the jury, inquiry into such bias is not merely permitted but essential. And because that inquiry can succeed only if prospective jurors feel free to answer candidly, the manner of the questioning matters as much as its content. See Part III..

**III. Attorney Participation, or, at Minimum, Meaningful Attorney Follow-Up, Is the Most Effective Method for Exposing Concealed Bias.**

Two features of attorney participation make it especially valuable here. First, counsel possess a fuller command of the facts and legal theories of the case than can be conveyed to the Court in advance, and are therefore better positioned to recognize and pursue the answers that reveal disqualifying bias. As the Fifth Circuit has explained, "it is the parties, rather than the court, who have full grasp of the nuances and the strengths and weaknesses of the case." *United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980).

Second, prospective jurors are frequently reluctant to disclose bias, particularly bias touching on religion, race, and ethnicity, whether because they perceive such bias to be socially unacceptable, because they are unaware of their own attitudes, or because they regard the questioning as intrusive. Research indicates that jurors tend to be more forthcoming when questioned by counsel than by the court, whom they may perceive as expecting the "correct," bias-free answer. A voir dire confined to generalized, group-directed questions posed from the bench is therefore ill-suited to the delicate work of surfacing the attitudes at issue in this case.

**IV. The Most Sensitive Inquiries Should Be Conducted Individually, and Pretrial Publicity Independently Warrants Probing Voir Dire.**

Whatever method the Court adopts, questioning on the subjects of religion, ethnicity, national origin, terrorism, and exposure to pretrial publicity should be

conducted individually and outside the hearing of the remaining prospective jurors. Individualized questioning serves two purposes: it permits prospective jurors to answer candidly on sensitive subjects without the pressure of a public setting, and it prevents a single juror's exposure to prejudicial material from contaminating the entire venire. See *United States v. Dansker*, 537 F.2d 40, 56 (3d Cir. 1976) ("[A]n individualized examination is the most effective manner by which to discover latent prejudices on the part of a particular juror[;] . . . under certain circumstances it may be the only means of assuring a defendant his right to an impartial jury.").

This prosecution has already attracted media attention, and coverage of terrorism cases involving Muslim defendants is pervasive. The Supreme Court has recognized that a searching voir dire, including the use of a detailed juror questionnaire, is an appropriate means of identifying and mitigating the prejudicial effects of pretrial publicity. *Skilling v. United States*, 561 U.S. 358, 388–95 (2010). Where prospective jurors have been exposed to inflammatory coverage, individualized questioning is the most reliable means of determining what each juror has seen and whether it has left an impression that cannot be set aside.

## V.    Requested Relief.

For the foregoing reasons, Defendant respectfully requests that the Court:

1.    Permit counsel to conduct voir dire of the prospective jurors; or, in the alternative,

2. Permit counsel to ask limited follow-up questions after the Court's own examination, see Fed. R. Crim. P. 24(a)(2);

3. Include in its examination the inquiries set forth in Defendant's Proposed Voir Dire, filed concurrently herewith; and

4. Conduct questioning on the subjects of religion, ethnicity, national origin, terrorism, and exposure to pretrial publicity individually and outside the hearing of the remaining prospective jurors.

**CONCLUSION**

For the reasons stated above, Defendant Anas Said respectfully requests that the Court grant this Motion and afford the relief requested.

Respectfully submitted,

/s/ Sufia Khalid
Sufia M. Khalid
Deputy Director, NSCDC
Muslim Legal Fund of America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
972-914-2507

/s/ Suha Najjar
Senior Staff Attorney, NSCDC
National Security Criminal Defense
Center
Muslim Legal Fund of America
100 N. Central Expy., Suite 1010

Richardson, TX 75080
972-914-2507

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of July, 2026, a true and correct copy of the foregoing was filed and served on all counsel of record via the Court's CM/ECF system.

/s/ Sufia Khalid
Sufia Khalid