## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | **CRIMINAL NO. H-24-561** |
| | § | |
| ANAS SAID, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Aaron F. Reitz, United States Attorney for the Southern District of Texas, and Steven Schammel and Liesel Roscher, Assistant United States Attorneys, and the defendant, Anas Said ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to Counts **One and Two** of the information and to persist with that plea of guilty through sentencing. Count One charges Defendant with **knowingly concealing and disguising the nature, location, source, ownership, and control of material support or resources, knowing and intending that the material support or resources were to be**

**provided to a designated foreign terrorist organization, namely, the Islamic State of Iraq and al-Sham ("ISIS")**, in violation of Title 18, United States Code, Section 2339C(c)(2)(A). **Count Two** charges the Defendant with **making a materially false statement and representation**, in violation of Title 18, United States Code, Section 1001(a)(2). By entering this plea, Defendant agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the information, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.      The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 2339C(c)(2)(a), is imprisonment of not more than 10 years and a fine of not more than $250,000. The maximum penalty for a violation of Title 18, United State Code, Section 1001(a)(2) as charged in the information, is imprisonment of not more than 5 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of any term of years or life for Count One and not more than 3 years on Count Two. *See* Title 18, United States Code, Sections 3583(j), 3559(a)(3) or (4), and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years on each

2

count without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and (4) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.     Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and

3

potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Cooperation

5. Should the Defendant seek to provide substantial assistance to authorities, as contemplated by Section 5K1.1 of the United States Sentencing Guidelines, the Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a § 5K1.1 motion. In seeking such a motion, the Defendant agrees to fully cooperate with the United States. The Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. The Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to attempting to provide material support or resources to a designated foreign terrorist organization and

4

knowingly concealing or disguising the nature, location, source, ownership, or control of any material support or resources, or any funds or proceeds of such funds, knowing or intending that the support or resources are to be provided or were provided in violation of Title 18, United States Code, Section 2339B. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in his possession or under his/her control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound

5

by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal, Collateral Review, and Statute of Limitations

7.      Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.      Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be

6

commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9.　In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7

10.     Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

11.     The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Counts One and Two of the information and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss of the sole count in the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party' within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b)     If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

12.     The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for any other federal criminal conduct related to evidence seized or uncovered during FBI's investigation of Defendant between June 2016, and

8

November 2024. This plea agreement binds only the United States Attorney's Office

for the Southern District of Texas and Defendant. It does not bind any other United

States Attorney's Office. The United States Attorney's Office for the Southern

District of Texas will bring this plea agreement and the full extent of Defendant's

cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with

10

the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)　At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)　At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16.　Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One and Two of the information. If this case were to proceed to trial, the United States could prove each element of the offenses in the information beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

**Factual Basis as to Count 1**

On or about October 15, 2004, the U.S. Secretary of State ("Secretary") designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration

11

and Nationality Act (the "INA") and as a Specially Designated Global Terrorist ("SDGT") under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (i.e., "ISIS"—which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO and SDGT listings: Islamic State, ISIL, and ISIS. On March 22, 2019, the Secretary added the following aliases to the FTO and SDGT listings: Amaq News Agency, Al Hayat Media Center, Al-Hayat Media Center, and Al Hayat. During all times relevant in the information, ISIS remained a designated FTO and ISIS remains a designated FTO today.

ISIS has both centralized and decentralized their media strategy production since 2013. The decentralization aspect has made it difficult to thwart the spread of ISIS propaganda because the ISIS media paradigm relies on different institutional efforts. For example, some propaganda is released solely by official media personnel through official channels. Other official ISIS media is released as a joint, coordinated

12

effort between appointed persons and supporters living abroad.

Anas Said ("Defendant"), is a pledged supporter of ISIS. From at least 2022, Defendant has used various social media and encrypted communications accounts to post, share, or disseminate ISIS propaganda. Defendant's use of multiple accounts across various online platforms where he posted, shared, or disseminated ISIS propaganda was part of his effort to avoid account detection by online providers as well as law enforcement. In particular, Defendant used Telegram, an encrypted communication application, in an attempt to communicate with members of ISIS in a way that Defendant believed would be secure.

In December 2023, Defendant knowingly concealed and disguised the nature, location, source, ownership, and control of material support or resources that he knew and intended were to be provided to ISIS. For example, in the Telegram chat described below, which was recovered from electronic devices that Defendant used and that were seized from his residence and conducted using a Telegram account that belonged to Defendant discussed creating pro-ISIS media and propaganda, as well as his attempts to avoid account attribution and deletion. These messages described below were primarily in Arabic, but are translated into English as follows, in part:

On December 11, 2023, Defendant reached out to an individual on Telegram and asked, "Brother, I edited the clip based on your comments. You are the number

13

1 designer for the Dawlah,[1] right?" The individual responded, "I am number 2" and then, "No worries, we are all one. Send it."

On December 13, 2023, Defendant wrote, "God bless you. I will publish in the group a clip of a new chant I designed with many various clips. Will that affect the group or can I post it normally? I will send it here first for you to see." The video is composed of clips selected by Defendant. The scenes show the gathering of ISIS fighters with their weapons, ISIS flags, and ISIS banners celebrating. The accompanying Arabic text translates to "Glory in us is brewing... [h]ere is the Caliphate of our religion, so be of good cheer." Additional scenes in the video show ISIS fighters engaging in combat with automatic weapons and sustaining casualties.

The individual with whom Defendant was communicating on Telegram responded that same day: "Amen. Send what you want to the group without asking us as long as it is your design. The brothers may be enthused when they see your designs. Don't worry about the group, there are more violations there than just clips. So publish it and don't worry or send me the design to publish so it won't affect your account."

---

[1] Dawlah (or dawla) literally meaning is "state," however this term is used by ISIS members and supporters to describe ISIS and its caliphate. It is essentially a shorthand by just saying "the State." When Defendant and others he was communicating with used the term "Dawlah" or "dawla," Defendant understand that they were referring to the "Islamic State," an alias for ISIS.

14

In a subsequent message, Defendant explained, "The words in the chant are the production of brothers in the Sarh al Khilafah Association[2] and that is why I used the logo of their institution in the design."

On December 17, 2023, Defendant sent the other individual a Telegram message saying, "Greetings, brother. I sent the clip to Sarh al-Khilafah Institution and they agreed to publish it on their channel. But they asked me to remove the Basmalah[3] because it is a nasheed [chant] and not a publication. They also asked me to remove my name as the designer of the video. But they liked it, Thanks be to God." Later that day, the other individual responded, "I published it in the group and will not delete anything from it because it is your right," and, "I was a little late publishing it because I was going to compress it first then publish it so a big number of brothers can watch it. I liked it."

---

[2] Sarh al Khilafah, (also spelled Sarkh al-Khilafa) or "Tower of the Caliphate," is an entity that has used social media platforms to produce content ranging from operational security tips to guides on chemicals and explosives. Some of this content appears to be aimed specifically at potential terrorist recruits living inside Western countries. As stated in an article published by Combating Terrorism Center at West Point titled "*The Cloud Caliphate: Archiving the Islamic State in Real-Time, 2021*," Sarh al-Khalifah is labeled as an "aggregator for legacy and current Islamic State content online." This article also described the evident linkage between Sarh al-Khalifa and the al-Bayan radio website, which provides live streaming services of ISIS radio content. In addition, according to public reporting, ISIS published a statement on Telegram in November 2022 announcing that Sarkh al-Khalifa was absorbing three other ISIS propaganda networks.

[3] "Basmalah" refers to the Islamic phrase, "In the name of God, the Merciful, the Compassionate."

On December 21, 2023, the other individual sent Defendant a message stating, "Hamam Designer Channel (the new designer for the Dawlah)[]| the link is not for public publishing to avoid being deleted risalah_jama'iyyah [#group_message]." Defendant understood this to be a link to a Telegram channel where the ISIS video Defendant sent to Sarh al-Khilafah was disseminated by the individual with whom Defendant was communicating on Telegram.

As the Telegram messages described above reflect, Defendant believed he was creating and providing ISIS propaganda to Sarh al-Khilafah. At the time Defendant was creating and providing this ISIS propaganda to Sarh al-Khilafah, Defendant believed that Sarh al-Khilafah was a media entity working on behalf of ISIS and in coordination with ISIS. Defendant intended the video to benefit ISIS and Defendant knew he was participating in concerted activity with a Foreign Terrorist Organization when he provided media to Sarh al-Khilafah. Defendant also understood that ISIS media entities like Sarh al-Khalifa relied on "munasirin" (volunteer media recruits), such as Defendant, to create and disseminate ISIS propaganda on behalf of ISIS. Defendant had read or viewed official ISIS propaganda material directing other ISIS supporters to create pro-ISIS media and referring to the creation and dissemination of ISIS propaganda as a form of jihad that ISIS supporters should wage on behalf of ISIS.

At the time he created and sent the ISIS propaganda video to Sarh al Khilafah, Defendant also intended to conceal the nature, location, source, ownership, and control of the video he sent by removing Defendant's own logo from the video.

**Factual Basis as to Count 2**

On October 9, 2023, on a Facebook account where he also posted pro-ISIS content, Defendant stated, "If I had weapons, I would have beaten the Jews and Americans in their backyards, but unfortunately I am prohibited from purchasing a weapons license because of their suspicion of me." Ten minutes later Defendant posted, "I only brought a dagger" and posted a photo of a large black Bowie styled knife. Defendant then posted, "There is a Unified brother in America. I contacted him and told him if we could do something on American soil because they would intervene during a ground attack, but he was evading. He told me that he was worried about his relatives." Then, Defendant posted, "Never mind, I understand you while I am thinking and hoping to kill the infidels with a weapon and as many people as possible in order to heal my heart."

On February 7, 2024, during a noncustodial interview at his residence, Defendant was asked by FBI special agents whether he ever possessed dangerous knives or weapons in reference to the large black Bowie styled knife and Defendant falsely stated that he did not ever possess any. In so doing, Defendant knowingly and willfully made a materially false statement and representation to the FBI

17

knowing that this statement and representation were untrue. When agents showed Defendant's mother a picture of the large black Bowie styled knife that Defendant has posted online on October 9, 2023, she told agents she threw the knife away. In Defendant's post-*Miranda* interview after his arrest on November 8, 2024, he admitted to possessing the large Bowie styled knife he posted a photo of in October 2023, as described above, contrary to his false statement and representation to the FBI during his February 7, 2024, interview.

Defendant posted other threats on different Facebook accounts on October 8, 2023, and October 9, 2023, that could qualify as an interstate threat pursuant to 18 U.S.C. Section 875. Thus, Defendant's statement denying possession of the Bowie knife was material to an investigation regarding these posts.

**Breach of Plea Agreement**

17.    If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant,

18

whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

18.     Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19.     Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

20.     As part of this plea agreement, Defendant agrees to the following:

(a)     to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation [including but not limited to the following specific assets:

(1.)     Black Samsung cell phone, S/N: R58M95MTEJV

19

(2.)    Silver Lenover laptop, S/N: PF2BSRLC
(3.)    Black Samsung tablet, S/N: R9YT700AAHI
(4.)    Black Asus laptop, S/N: N3NOCX20E282111
(5.)    Samsung cell phone - black with silver back
(6.)    Blue pen+gear notebook/ notebook with ISIS pledge
        stencil
(7.)    Top Gun target
(8.)    Black Flag with Arabic writing
(9.)    Five (5) box-cutters & One (1) folding knife
(10.)   Mossy Oak folding knife
(11.)   Black folding knife
(12.)   DELL LATITUDE 5480 S/N 5DXCNN2 LAPTOP
        WITH CHARGER
(13.)   BLU CELL PHONE MODEL S91PRO
(14.)   SANDISK CRUZER GLIDE USB (16GB
(15.)   ONN 3.0 USB # 100003559 (64GB)
(16.)   MOTOROLA PHONE [DAMAGED]

(b)    to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c)    that that the Court will determine the proper amount of a money judgment, if any;

(d)    that if a money judgment is ordered, one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e)    to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

21.    Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on

20

a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

22.    Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

<b>Complete Agreement</b>

23.    This written plea agreement, consisting of 24 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered

21

into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _*Houston*_, Texas, on _*July 24*_, 20_26_.

_____
ANAS SAID
Defendant

Subscribed and sworn to before me on _*July 24*_, 20_26_.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Aaron F. Reitz
United States Attorney

By:_____
Steven Schammel
Liesel Roscher
Assistant United States Attorneys          Attorney for Defendant
Southern District of Texas

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-24-561 |
| | § | |
| ANAS SAID, | § | |
| Defendant. | § | |

## PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____

Attorney for Defendant

Date  7/24/26

23

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me and the information to which I am pleading guilty. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Defendant

_7/24/26_____
Date

24